2008 ME 1

**Elizabeth A. AHERN**

v.

**Donald M. AHERN.**

Supreme Judicial Court of Maine.

Argued: Oct. 24, 2007.

Decided: Jan. 3, 2008.

Roger G. Innes, Esq. (orally), Mt. Desert, ME, for appellant.

Marvin H. Glazier, Esq., Jams C. Munch, III, Esq. (orally), Vafiades, Brountas & Kominsky Key, Bangor, ME, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

LEVY, J.

[¶ 1] Elizabeth A. Ahern appeals from a divorce judgment entered in the District Court (Ellsworth, *Staples, J.*). Elizabeth contends that the court erred (1) in finding that the goodwill value of Donald M. Ahern's dental practice was not marital property subject to distribution, and (2) in failing to nullify a limited liability company Donald established in which their children hold 80% of the ownership interest. Finding no error or abuse of the court's discretion, we affirm the divorce judgment.

## I. BACKGROUND

[¶ 2] The Aherns were married in 1982 and Elizabeth filed a complaint for divorce in October 2003. Donald has been a practicing dentist throughout the marriage, and at the time of the divorce, he was the sole principal of his own practice. Elizabeth was the primary caretaker of the home and the parties' four children, ages eighteen, sixteen, thirteen, and eleven as of the filing of the divorce complaint.

[¶ 3] The Aherns reached an agreement regarding parental rights and responsibilities and contact issues, but were unable to agree on various property distribution issues. A three-day hearing was held in May 2006 to address these property issues, including (1) the value of Donald's dental practice and what portion of that value could be distributed as marital property; and (2) whether the court should nullify DMA Real Estate, LLC, of which Donald and the parties' four children were the only members, thereby bringing all the real property held by the LLC into the marital estate.

[¶ 4] In its decision distributing the parties' marital property, the court found that only the hard assets of Donald's dental practice were subject to equitable distribution, and the court valued these assets at $116,773. The court rejected Elizabeth's assertion that the goodwill value of the practice was property subject to equitable distribution. The court also declined to nullify the LLC, finding "it is more likely than not that both parties were not only aware of the LLC but were also in agreement with it although it reduced the marital estate to 20% of the value of the real estate." It further determined that dissolution of the LLC was "not an action available in this divorce venue." After the court denied the parties' motions to amend the judgment and for additional findings of facts and conclusions of law, this appeal followed.[1]

---

1. In addition to her contentions regarding the dental practice and the LLC, Elizabeth also contends that the court erred by (1) not ordering that the dental practice be sold; (2) in issuing an improper order of clarification; and (3) in its distribution of marital debt. Donald cross-appeals from the divorce judgment, contending that the court erred in finding that two pieces of real estate were marital property. We are not persuaded by, and do not separately address, these contentions.

## II. DISCUSSION

[¶ 5] "In a proceeding for a divorce ... the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors...." 19–A M.R.S. § 953(1) (2006). Most property acquired by the parties subsequent to marriage is marital property subject to equitable distribution under section 953. *Id.* § 953(2) (2006).[2] The determination of whether property is marital or non-marital is a question of fact that we review for clear error. *Warren v. Warren,* 2005 ME 9, ¶ 20, 866 A.2d 97, 101. With these standards in mind, we turn to consider whether (A) the goodwill value of a dental practice is marital property subject to equitable distribution, and (B) the court has the authority in a divorce proceeding to nullify an LLC established by one of the parties in order to distribute property held by the LLC as marital property.

### A. Goodwill Value of the Dental Practice

[¶ 6] At trial, Elizabeth's expert appraisal witness testified that Donald's dental practice had a fair market value of $538,000, of which the hard assets accounted for $183,546 and goodwill accounted for $173,073. The appraiser failed to explain the character of the remaining balance of $ 181,381. In explaining the goodwill, the appraiser stated that this value was attributable to Donald's reputation and skill as a dentist, and that Donald's ability to realize this goodwill would require him to sell the practice, but then remain with the practice for an unspecified period of time following the sale in order to continue to treat the practice's patients and transfer their care to the new dentist.

[¶ 7] In arriving at his ultimate value of $538,000 for the dental practice, the appraiser used an excess earnings method whereby he averaged the earnings of the practice over the five years previous to the divorce hearing. The appraiser acknowledged that in these previous years the practice had at least one other dentist working full-time in addition to Donald, and that the earnings of the practice were accordingly much higher in those years than in the current year. He explained that his valuation assumed that the practice would, in the near future, hire additional dentists and return to its previous earning capacity.

[¶ 8] Donald's expert appraisal witness testified to a fair market value for the practice of $366,000. He agreed that the practice had goodwill value and that realizing this value was contingent on Donald's participation in the practice for a considerable period of time after its sale. Donald's appraiser did not explain, however, what portion of the $366,000 value was attributable to goodwill.

[¶ 9] The court independently arrived at a value of $116,773 for the dental practice, treating the same as marital property subject to equitable distribution. In re-

---

**2.** Exceptions include:

A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

C. Property acquired by a spouse after a decree of legal separation;

D. Property excluded by valid agreement of the parties; and

E. The increase in value of property acquired prior to the marriage and the increase in value of a spouse's nonmarital property as defined in paragraphs A to D. 19–A M.R.S. § 953(2) (2006).

jecting the valuation of Elizabeth's appraiser, the court stated that his "appraisal is admittedly dependent upon suppositions as to [Donald] continuing in the practice (personal goodwill) and the averaging over the last five years during which there were more operating dentists generating more income." The court also explained:

> [Elizabeth's appraiser] testified that the value [of the practice] included the amount of $173,073 which he attributed to the value of good will which the [c]ourt concludes represented the personal good will of [Donald] as opposed to any "enterprise good will,"
>
> . . .
>
> Although our Law Court has not addressed the issue of whether personal good will in a professional practice is [marital] property subject to division . . . the majority view in the United States, is that it is not.
>
> . . .
>
> If the values of the hard assets and goodwill are deducted from [Elizabeth's appraiser's] appraisal, there is still a balance of $191,381 which is not explained unless it is to be deemed the value of "enterprise goodwill." However there is no evidence upon which to make that conclusion.
>
> . . .
>
> The [c]ourt concludes that the actual fair market value of the hard assets and the value of the practice lies between, to wit: $116,773.00.

[¶ 10] Elizabeth contends that the court should have accepted her appraiser's valuation of the dental practice, and found that its goodwill was marital property subject to distribution. She also contends that even if the court found that some of the goodwill value of the business was not marital property, the remainder of her appraiser's value of $538,000 should have been distributed as marital property.

[¶ 11] As both parties recognize, we have not previously addressed how a divorce court should treat the goodwill of a professional practice in making an equitable distribution of property under 19-A M.R.S. § 953 (2006). A business's goodwill consists of its "reputation, patronage, and other intangible assets that are considered when appraising the business." BLACK'S LAW DICTIONARY 703 (7th ed.1999). Most jurisdictions embrace a framework that distinguishes between "enterprise" goodwill and "personal" goodwill. *See May v. May*, 214 W.Va. 394, 589 S.E.2d 536, 541–47 (W.Va.2003) (collecting cases from the forty-two states that have addressed the issue and the three different approaches that have developed in those states). Under this approach, enterprise goodwill "is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers, and may include a business location, its name recognition and its business reputation." *Id.* at 541–42 (quoting *Frazier v. Frazier*, 737 N.E.2d 1220, 1225 (Ind.Ct.App.2000)). Personal goodwill, in contrast, "is associated with individuals. It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people." *Id.* at 542 (quotation marks omitted).

[¶ 12] Although most courts acknowledge the distinction between enterprise and personal goodwill, these courts often differ in their treatment of the two categories for purposes of property distribution. Twenty-five states treat enterprise goodwill as property subject to valuation and distribution in a divorce proceeding, and treat personal goodwill as not being property subject to division. *See id.* at 545 n. 16 (listing cases from twenty-four other states, in addition to West Virginia, that have adopted this approach). Instead,

personal goodwill "is properly considered only as future earning capacity. . . ." *Yoon v. Yoon,* 711 N.E.2d 1265, 1269 (Ind.1999). A number of other states have found either that both personal and enterprise goodwill are property subject to distribution, *see, e.g., Sommers v. Sommers,* 660 N.W.2d 586 (N.D.2003), or, at the other extreme, that neither form of goodwill constitutes property, *see, e.g., Singley v. Singley,* 846 So.2d 1004 (Miss.2002). *See generally* Christopher A. Tiso, *Present Positions on Professional Goodwill: More Focus or Simply More Hocus Pocus?,* 20 J. Am. Acad. Matrimonial Law. 51 (2006).

[¶ 13] Although we have not squarely addressed this question in the past, our prior decisions have implicitly recognized the distinction between enterprise and personal goodwill. We have previously found that an insurance agency, as distinct from a professional practice, has goodwill value that is divisible upon divorce. *Lord v. Lord,* 454 A.2d 830, 833 (Me.1983). In so finding, we reasoned

> the good will of an insurance agency such as the one involved in this case is not necessarily dependent on the continued employment of the agent who developed the agency. This type of agency and its good will may be transferred to a third party and operated by that third party without the assistance of the person who developed the business.

*Id.* We have also recognized that a professional degree or license earned during the marriage is not a species of property subject to equitable distribution. *Sweeney v. Sweeney,* 534 A.2d 1290, 1291 (Me.1987). This is because "[t]he value of a profes-

sional degree for purposes of property distribution is nothing more than the possibility of enhanced earnings that the particular academic credential will provide." *Id.* (quotation marks omitted). Therefore, we indicated that a professional degree was more properly considered in the context of an award of spousal support than in the context of property distribution.[3] *Id.* at 1291–92. The enhanced earning capacity a professional enjoys as a result of her academic credentials, licensure, experience, and reputation is, as previously noted, the essence of "personal" goodwill.

[¶ 14] We now adopt the enterprise/personal framework for the purpose of evaluating the goodwill of a professional practice in the context of an equitable distribution of property. As a general principle, the personal goodwill of a professional practice, such as the dental practice at issue in this case, is not a species of property. It is, however, relevant to establishing a professional's earning capacity for purposes of determining support issues. *See* 19–A M.R.S. § 951–A(5) (2006) (providing that the court should consider factors such as "[t]he employment history and employment potential of each party," "[t]he income history and income potential of each party," and "[t]he education and training of each party," in making an award of spousal support); 19–A M.R.S. § 2006(1) (2006) (providing that child support obligations are to be determined based on the parties' gross income). It may also be relevant to establishing a professional's "economic circumstances . . . at the time the division of property is to become effective" for the purpose of arriv-

---

3. We expressly declined to decide whether to adopt or reject the enterprise/personal goodwill framework in *Hess v. Hess,* 2007 ME 82, ¶ 17, 927 A.2d 391, 395. In that case, both parties' experts testified that a spouse's investment business had a goodwill value, and that the goodwill value was transferable and realizable upon a sale of the business. *Id.* ¶ 18, 927 A.2d at 396. As such, it was distributable as marital property. *Id.* ¶ 19, 927 A.2d at 396.

ing at a just division of the parties' marital property. 19–A M.R.S. § 953(1)(C).

[¶ 15] In the present case, the court correctly treated the goodwill value of Donald's dental practice as personal goodwill not subject to distribution as property. Both Donald's and Elizabeth's appraisers unequivocally testified that the goodwill value of the dental practice was attributable to Donald's skill and reputation. As such, it was not readily transferable or realizable because it was contingent on future events such as Donald's willingness and ability to participate in a sale of the practice. Neither appraiser treated it as a component of the value of the practice arising from the practice's generally marketable established relationships, name, and business reputation, which are the earmarks of enterprise goodwill. Although we do not presume to address all possible permutations of the enterprise/personal goodwill distinction—and we caution that these categories could prove overly simplistic when applied to the circumstances of other cases—we have no difficulty in concluding on the facts before us that the personal goodwill value of Donald's dental practice is not a species of property subject to equitable distribution.

[¶ 16] We are also not persuaded by Elizabeth's argument that the court should have accepted her appraiser's overall valuation of the practice and distributed any value in excess of the personal goodwill as marital property. The court acted within its discretion in rejecting her appraiser's valuation because his earnings analysis failed to account for the reality that during the five-year period he analyzed, the practice employed more practicing dentists than it did at the time of the divorce. Further, the appraiser failed to explain whether the additional value of the practice, beyond the value of the assets and personal goodwill, could be considered

enterprise goodwill—that is, readily marketable and realizable. Finally, he failed to account for the cost to Donald of realizing any goodwill associated with the sale of the practice in his valuation, and what effect that would have on his earning capacity.

[¶ 17] Because the goodwill value of the dental practice was not property, the court did not err in declining to distribute it as marital property. Nor did the court commit clear error in its independent valuation of the dental practice.

### B. DMA Real Estate, LLC

[¶ 18] Donald formed the LLC in 2000 to hold title to the real estate at which his dental practice is located. Donald was the sole member of the LLC until later that year, when he transferred 10% ownership interests in the LLC to each of his four children. The operating agreement effecting these transfers was signed by Elizabeth four times, "as custodian for" each of her children. In 2001, Donald transferred an additional 10% interest to each of the parties' children, with Elizabeth again holding these interests as custodian. Therefore, at the time of the divorce, Donald and the four children each held a 20% interest in the LLC. Both Donald and Elizabeth testified at trial that they made these transfers for the purpose of saving for the children's college educations.

[¶ 19] The court found that both parties were aware of and were in agreement regarding the formation of the LLC despite the fact that it removed 80% of the value of the real estate from the marital estate. Elizabeth argues that the transfers of LLC interests to the children were not irrevocable, and the court erred by not nullifying the LLC agreement and treating all of the real estate held by the LLC as marital property.

[¶ 20] Maine's Limited Liability Company Act provides that a court may order dissolution of an LLC only in certain circumstances. 31 M.R.S. § 702 (2006). A member seeking dissolution must initiate an action that alleges one or more of the specific bases recognized by the Act for a dissolution pursuant to court order, such as that management is deadlocked, managers have committed fraud or other misconduct, waste of company assets is occurring, or the LLC has abandoned its business. *Id.* § 702(1).[4] The Act does not recognize the divorce of one or more of the parties who created an LLC as a basis for dissolution.

[¶ 21] Absent the agreement of the parties and other interested persons, a court is without authority to dissolve or refuse to recognize an LLC except as provided in section 702 of the Limited Liability Company Act. *See id.* § 701 (2006). Accordingly, the court in this case did not err when it concluded that it lacked the authority to nullify the LLC in its divorce judgment as requested by Elizabeth.

[¶ 22] That is not to say that a spouse who is not a member of an LLC formed by the other spouse, and therefore cannot bring a separate action for dissolution, has no recourse in a divorce proceeding. Where the circumstances indicate that the creation or operation of an LLC constituted economic misconduct, the court may consider this as a factor when equitably distributing property under 19-A M.R.S. § 953 and in awarding spousal support under 19-A M.R.S. § 951-A. Elizabeth, however, has not alleged that Donald committed economic misconduct in forming the LLC or in transferring ownership interests to the parties' four children, nor do the facts support such a conclusion. Thus, we need not currently address precisely how a court should factor in any economic misconduct associated with the creation of an LLC in equitably distributing the parties' marital property.

[¶ 23] Both parties also dispute whether the transfers of the LLC interests to the parties' children complied with the Maine Uniform Transfers to Minors Act,

---

4. 31 M.R.S. § 702(1) (2006) provides:

The Superior Court of this State may decree the dissolution of, and liquidate the assets and business of, a limited liability company:
1. ACTION FILED BY MEMBER. In an action filed by a member in which it is established that:
A. The managers of the limited liability company are so divided respecting the management of the limited liability company's business and affairs that the votes required for action by the managers cannot be obtained and the members are unable to terminate the division, with the consequence that the limited liability company is suffering or will suffer irreparable injury, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members generally;
B. The members are so divided respecting the management of the business and affairs of the limited liability company that the limited liability company is suffering or will suffer irreparable injury, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members;
C. The acts of the managers or those in control of the limited liability company are illegal or fraudulent;
D. The assets of the limited liability company are being misapplied or wasted;
E. The petitioning member has a right, under a provision of the articles of organization, the operating agreement or section 701, to dissolution of the limited liability company at will or upon the occurrence of any specified event or contingency and has made a conforming demand upon the managers or members in control, who have failed to proceed with dissolution as required by section 701; or
F. The limited liability company has abandoned its business and has failed, within a reasonable time, to take steps to dissolve and liquidate its affairs and distribute its assets.

33 M.R.S. §§ 1651–74 (2006). Where property is validly transferred to a child under the Act, that transfer is irrevocable, and as such may not be distributed as marital property. *See* 33 M.R.S. § 1662(2); *Williams v. Williams,* 1998 ME 32, ¶ 13, 706 A.2d 1038, 1040–41. In the present case, we need not address whether the transfers complied with the Maine Uniform Transfers to Minors Act because the court could not have dissolved the LLC. Therefore, there is no threat that the children's interests in that entity will soon be revoked.

[¶ 24] The court did not err in concluding that it lacked the authority to dissolve or refuse to recognize the existence of the LLC.

The entry is:

Judgment affirmed.